**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

**BERNAFON, INC.**,

Plaintiff,

v.

**BENSON MEDICAL INSTRUMENTS COMPANY**,

Defendant.

Civil No. 02-777 (JEL/JGL)

**ORDER**

**BERNAFON, INC.**,

Plaintiff,

v.

**BENSON MEDICAL INSTRUMENTS COMPANY**,

Defendant.

Civil No. 02-3466 (JEL/JGL)

APPEARANCES

David Fairbairn, Esq., Michael Pape, Esq., and Dina Colling, Esq., on behalf of Plaintiff

Joanne Turner, Esq., on behalf of Defendant

JONATHAN LEBEDOFF, Chief United States Magistrate Judge

The above-entitled matter came on for hearing before the undersigned Chief Magistrate Judge of District Court on November 20, 2002 on Defendant's Motion to Disqualify Plaintiff's Counsel (Doc. No. 13 in Case No.

NOV 2 6 2002
FILED
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

02-CV-777, and no Doc. No. in Case No. 02-CV-3466). The case has been referred to the undersigned for resolution of pretrial matters pursuant to 28 U.S.C. § 636 and D. Minn. LR 72.1.

## I. FACTS

These patent infringement cases have an interesting history, and the Parties have differing versions of some of the important facts which give rise to the instant motion. However, the Parties do agree on the following facts: Defendant is a manufacturer of audiometers, devices used to test hearing. Beginning in November 1997, Defendant provided Plaintiff with audiometers which Plaintiff then marketed under the MAICO name as the MA 1000. The MA 1000 is identical to a product Defendant sells as the CCA-200, the only difference being the MAICO label. In 1998, a patent on multimedia audiometers issued to Plaintiff's competitor, Tremetrics Occupational Health Group. That patent is known as the '681 patent. At this point, the Parties' versions of the facts begin to differ.

According Plaintiff, at the time it became aware of the '681 patent in late September or early October 1998, it requested that the law firm of Kinney & Lange begin an analysis of the '681 patent with respect to the MA 1000. (Perlt Decl. ¶¶ 18-19.) Ron Perlt, Plaintiff's Vice President, states that during October 1998, he had several meetings with David Fairbairn, Esq. of Kinney & Lange regarding legal advice on this issue. (Id. ¶ 20.) However,

Attorney Fairbairn was unable to complete his analysis of Plaintiff's position without technical information regarding the operation of the MA 1000. (Id.) Plaintiff was unable to provide any technical information because throughout their business relationship, Defendant refused to provide Plaintiff with any technical information. (Id. ¶¶ 14-16, 20.) Indeed, Defendant would only provide technical information to a third-party escrow agent. (Id. ¶16.) In order to obtain the needed technical information, Mr. Perlt brought Steve Benson to at least one meeting with Attorney Fairbairn. (Id. ¶ 22.) Mr. Benson is Defendant's president. During the meeting, Mr. Perlt introduced Fairbairn as Plaintiff's attorney. (Id. ¶ 24.) Mr. Perlt recalls that prior to the meeting, he and Attorney Fairbairn discussed attorney-client privilege and were careful not to reveal any confidential information in Mr. Benson's presence. (Id. ¶23.)

According to Plaintiff, Mr. Benson was not very forthcoming during the meeting, and the conversation deteriorated into a form of "twenty questions" during which Attorney Fairbairn went through the '681 patent claim by claim and asked Mr. Benson if the MA 1000 performed each of the functions enumerated in the patent. (Id. ¶ 24; Fairbairn Representation during Mot. Hear., Nov. 20, 2002.) Mr. Perlt states that although Mr. Benson refused to provide any technical information during this meeting, he "suggested that he would modify the MA 1000 by moving the logical testing procedures from the audiometer firmware to the PC software." (Id. ¶24.) A short while later, Mr.

Perlt received confirmation from Mr. Benson that he had made the proposed changes to the MA 1000. (Id. ¶27.)

According to Defendant, the Parties jointly consulted Attorney Fairbairn for an opinion regarding the '681 patent. (Benson Aff. ¶ 5.) Defendant asserts that two meetings took place in November 1998. (Id. ¶ 6.)[1] Mr. Benson also states that he changed the MA 1000 in response to a suggestion made by Attorney Fairbairn. (Id. at ¶¶ 6-8.)

In January 1999, Kinney & Lange issued their opinion regarding the MA 1000. Defendant never saw this opinion, and Attorney Fairbairn counseled Mr. Perlt that disclosing the contents of the opinion could result in a waiver of their attorney-client privilege. Defendant never requested to see the opinion, and never had any further communications with Kinney & Lange.

On January 1, 2002, Plaintiff acquired Tremetrics and all of its intellectual property, including the '681 patent and a continuation application for the '681 patent, which recently issued as the '482 patent. On April 12, 2002 Plaintiff sued Defendant for infringement of the '681 patent ("the '681 Litigation"). The complaint was signed by David Fairbairn of Kinney & Lange. On July 30, 2002, Defendant first noted its objection to Plaintiff's use of Kinney

[1]Attorney Fairbairn is also unsure as to whether Mr. Benson attended one or two meetings. (Fairbairn Decl. ¶ 13.) For convenience, and without deciding whether one or two meeting occurred, the Court will refer to the meeting or meetings as "the November 1998 meetings."

& Lange as litigation counsel. On August 23, 2002, Plaintiff sued Defendant for infringement of the '482 patent ("the '482 Litigation"). The complaint was signed by David Fairbairn of Kinney & Lange.

In the instant motion, Defendant seeks to have Kinney & Lange disqualified as Plaintiff's counsel. The Parties also request that the Court issue a Pretrial Scheduling Order in Case No. 02-CV-3466 (JEL/JGL).

## II. DISCUSSION

### A. Whether Kinney & Lange Should Be Disqualified as Plaintiff's Counsel

"The decision to disqualify a competent lawyer, freely chosen by a party, is of serious concern to this Court." Federal Deposit Ins. Co. v. Amundson, 682 F. Supp. 981, 985 (D. Minn. 1988). When a disqualification motion is brought by opposing counsel, a court should recognize the potential for abuse and subject the motion to "particularly strict judicial scrutiny." Harker v. C.I.R., 82 F.3d 806, 808 (8th Cir. 1996) (citations omitted). The party who seeks to disqualify opposing counsel has the burden to show that disqualification is warranted. See Olson v. Snap Prod., Inc., 183 F.R.D. 539, 542 (D. Minn. 1998) (citation omitted). However, any doubt is to be resolved in favor of disqualification. Id. at 544 (citing Coffelt v. Shell, 577 F.2d 30, 32 (8th Cir. 1978)). In resolving issues of disqualification, the District of Minnesota applies the Minnesota Rules of Professional Conduct. See Bieter Co. v. Blomquist, 132 F.R.D. 220, 223 (D. Minn. 1990) (citation omitted). Defendant

contends that Kinney & Lange should be disqualified for breaching Minnesota Rule of Professional Conduct 1.9(a).

### 1. <u>Rule 1.9(a)</u>

Rule 1.9(a) provides: "A lawyer who has formerly represented a client in a matter shall not thereafter . . . represent another person in the same or substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation." Minn. Rules of Prof'l Conduct R. 1.9(a). The moving party must show (1) a prior attorney-client relationship with opposing counsel; (2) its interests are adverse to the interests of opposing counsel's present client; and (3) the matters in the current lawsuit are substantially related to the matters for which opposing counsel previously represented the moving party. <u>See</u> <u>Bieter</u>, 132 F.R.D. at 223. A motion to disqualify counsel must be made with "reasonable promptness" after a party learns the facts upon which such a motion is based. <u>See</u> <u>id.</u> (citation omitted).

#### a. <u>Prior Attorney-Client Relationship</u>

There are two theories under which parties can establish an attorney-client relationship: (1) the contract theory, and (2) the tort theory. Under the contract theory, an attorney-client relationship exists when the parties agree, either explicitly or implicitly, that the attorney will provide legal services to the client. <u>See</u> <u>Viet v. Anderson</u>, 428 N.W.2d 429, 431-32 (Minn. Ct.

App. 1988) (citing Togstad v. Vesely, Otto, Miller & Keefe, 291 N.W.2d 686, 693 (Minn. 1980)). In the instant case, the Court finds that no attorney-client relationship existed under the contract theory. Defendant does not even argue that there is an explicit agreement in this case. There is no contract or other documentation supporting an attorney-client relationship. Defendant never paid Kinney & Lange for legal services. Moreover, there is no indication that Mr. Fairbairn ever agreed to provide legal services to Defendant. In fact, there is undisputed evidence that Mr. Fairbairn was introduced to Mr. Benson as Plaintiff's attorney, and that Mr. Perlt and Mr. Fairbairn took pains not to divulge privileged communications in Mr. Benson's presence. (Perlt Decl. ¶¶ 23-24; Fairbairn Decl. ¶¶ 13-14.)

Under the tort theory, an attorney-client relationship exists "whenever a person seeks and receives legal advice from a lawyer under circumstances in which a reasonable person would rely on the advice." Langeland v. Farmers State Bank of Trimont, 319 N.W.2d 26, 30 (Minn. 1982) (citation omitted). In the instant case, the Court is persuaded that Mr. Benson did not seek legal advice from Kinney and Lange, and that the only reason Mr. Benson attended the November 1998 meetings was at the behest of Plaintiff. It was Plaintiff who sought the advice of Kinney & Lange on several occasions prior to the November 1998 meetings. Although Defendant avers that it jointly sought legal advice from Kinney & Lange (Benson Aff. ¶ 5), the Court does not

find that argument persuasive. Defendant simply did not act in the way that a reasonable client acts in an attorney-client relationship.

First, Defendant never provided Kinney & Lange with any confidential information, even though it seems obvious that technical specifications, schematics, and the like would have helped Mr. Fairbairn render the most accurate opinion possible.[2] Second, except to fax a letter stating that changes had been made to the MA 1000 "as a result of our conversations," Mr. Benson never again communicated with Kinney & Lange. (Fairbairn Decl. ¶ 30; Benson Aff. Attach.) Importantly, Defendant never even requested a copy of Attorney Fairbairn's opinion concerning the '681 patent. (Perlt Decl. ¶¶ 28-30; Fairbairn Decl. ¶ 21.) A reasonable person in an attorney-client relationship who felt that his attorney was issuing an opinion so that he could avoid patent infringement would surely request a copy of the opinion. At the very least, a reasonable client would inquire as to whether the opinion had been completed. The fact that Mr. Benson never met with Mr. Fairbairn without Mr. Perlt; failed to provide any confidential information to Kinney & Lange; was not involved in any prior or subsequent communications regarding Mr. Fairbairn's opinion; and merely sent a fax stating that changes had been made without providing proof of the change (Fairbairn Decl. ¶ 25), all support

[2]Lack of such technical information resulted in Attorney Fairbairn issuing a qualified opinion regarding Plaintiff's position with respect to the '681 patent. (Fairbairn Decl. ¶ 25.)

the conclusion that Defendant knew that Mr. Fairbairn was not representing it on this issue.

Third, Mr. Benson knew that Kinney & Lange represented Plaintiff. There is no evidence that Mr. Fairbairn indicated that he was representing Defendant. In fact, Mr. Fairbairn was introduced as Plaintiff's attorney. Defendant never asked Mr. Fairbairn to represent it or to issue an opinion on Defendant's behalf. (Fairbairn Decl. ¶¶ 21, 23.) The fact that Mr. Fairbairn did not advise Mr. Benson to seek out his own counsel on this issue (Benson Aff. ¶ 9) is not dispositive. Mr. Benson is a sophisticated business person. Moreover, Mr. Benson took great pains to protect his business interests and secrets. It is not reasonable for such an individual to think he is being represented by an attorney who specifically states he is representing another, and who never communicates with him privately, or even provides him with the opinion he was allegedly engaged to write.

Although Defendant's Counsel argued at the motion hearing that both Parties' interests were aligned in November 1998, and therefore it was reasonable for Mr. Benson to rely on Mr. Fairbairn's advice as one would rely on the advice of an attorney, past dealings between the two Parties belie that assertion. Defendant never trusted Plaintiff with any of its technical information, and at the time the Parties entered into their dealership agreement Defendant insisted upon stiff penalties should Plaintiff somehow

become privy to such information and use it to compete against Defendant. (Perlt Decl. ¶ 16.) This long-standing distrustful relationship also makes it unreasonable for Defendant to rely on the advice of Attorney Fairbairn as if Mr. Fairbairn represented Defendant's interests. See TJD Dissolution Corp. v. Savoie Supply Co., 460 N.W.2d 59, 62 (Minn. Ct. App. 1990). This is especially true when Defendant knew that Kinney & Lange had a long standing relationship with Plaintiff and obviously owed Plaintiff a duty of loyalty. See id. Even if the Parties had similar interests at the time, that alone is of no consequence. Representing Defendant's interests is not the same as representing Defendant. See Bieter, 132 F.R.D. at 225. Finally, even if Mr. Benson had that subjective belief that Mr. Fairbairn was representing him, that would not change the Court's conclusion. A party's expectation that an attorney will represent him is insufficient to create an attorney-client relationship. See Spannaus v. Larkin, Hoffman, Daly & Lindgren, Ltd., 368 N.W.2d 395, 398-99 (Minn. Ct. App. 1985). In this case, the Court is convinced that such a subjective belief was unreasonable under the circumstances.

Thus, the Court finds that Defendant was never in an attorney-client relationship with Kinney & Lange. The facts simply do not support such a conclusion. See Bieter, 132 F.R.D. at 224 (stating that disqualification questions are "intensely fact specific").

**b. Adverse Interests and Substantial Relationship**

Since there was no attorney-client relationship between Defendant and Kinney & Lange, the Court need not reach the issues of adverse interests and substantial relationship. Without an attorney-client relationship, Defendant's motion must be denied.

**2. Reasonable Promptness**

The Court declines to disqualify Kinney & Lange on another basis as well. A motion to disqualify counsel "should be made with reasonable promptness after a party discovers the facts which lead to the motion." Central Milk Producers Coop. v. Sentry Food Stores, Inc., 573 F.2d 988, 992 (8th Cir. 1978). Here, Defendant learned that Kinney & Lange was representing Plaintiff in the '681 Litigation on April 12, 2002. (Doc. No. 1 in Case No. 02-CV-777.) In fact, Attorney Fairbairn signed the complaint. (Id. at 3.) However, Defendant did not raise the issue of disqualification until July 30, 2002. (Turner Aff. Ex. 1.) Contrary to Defendant's argument, identifying Attorney Fairbairn as a person likely to have discoverable information in its Rule 26 disclosures, and subpoenaing Kinney & Lange's files was not the same as requesting disqualification. Moreover, once Defendant did request disqualification, and Plaintiff promptly refused, Defendant failed to pursue the issue in a timely fashion, allowing Plaintiff to draw the reasonable conclusion that Defendant had abandoned its objections.

Defendant had several opportunities to object to Kinney & Lange's representation, and failed to do so. Defendant does not rebut Plaintiff's assertion that Defendant failed to raise the issue in its answer and counterclaims; during settlement negotiations between the Parties' principals; during the Rule 26(f) conference; during the scheduling conference with Magistrate Judge Susan Nelson, in spite of the fact that Judge Nelson specifically asked the Parties "whether any additional issues existed or whether any motions were planned;" during negotiations with Kinney & Lange regarding the protective order in this case; and while responding to discovery requests from Kinney & Lange. (Pl. Mem. Opp. Mot. Disqualify Pl. Counsel at 23.) Defendant did not file its motion with reasonable promptness, and Defendant's motion to disqualify Kinney & Lange in the '681 Litigation is denied on this basis as well.

Although Defendant's delay is not as obvious in the context of the '482 Litigation, which was filed on August 23, 2002, the Court still finds Defendant's failure to raise the issue at an earlier date disturbing. Defendant requested that Kinney & Lange withdraw from representation in the '681 Litigation on July 30, 2002. (Turner Aff. Ex. 1.) On August 1, 2002, Kinney & Lange sent Defendant's counsel a letter in which it declined to do so. (Id. Ex. 2.) In that letter, Kinney & Lange expressed surprise at Defendant's failure to raise the issue at an earlier date. (Id.) Defendant was therefore on notice that

Kinney & Lange would continue representing Plaintiff. This was even more obvious when Kinney & Lange prepared and served the complaint in the '432 Litigation. Defendant should certainly have requested that Kinney & Lange withdraw before filing the instant motion on October 29, 2002. There is no evidence that Defendant ever did so. This "foot dragging," along with Defendant's apparent acquiescence to Kinney & Lange's representation in the '681 Litigation also makes denial of Defendant's motion in the '482 Litigation proper.

### 3. <u>Whether Kinney & Lange Must be Disqualified Because Attorney Fairbairn May be a Witness at Trial</u>

Defendant argues that Kinney & Lange must also be disqualified because it intends to call Attorney Fairbairn as a witness at trial. Defendant characterizes Attorney Fairbairn as a "pivotal witness" in this case. (Def. Mem. Supp. Mot. Disqualify Pl. Counsel at 10.) Plaintiff responds that Attorney Fairbairn is not a necessary witness in this case because there are two other people – Mr. Perlt, and Mr. Benson – who can testify as to what was said at the November meetings.

According to D. Minn. LR 83.6(d), lawyers admitted to practice in federal court are bound by the Minnesota Rules of Professional Conduct. Rule 3.7 of the Minnesota Rules of Professional Conduct applies in this case and reads as follows:

**Rule 3.7. Lawyer As Witness**

> A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness except where:
>
> A. the testimony relates to an uncontested issue;
>
> B. the testimony relates to the nature and value of legal services rendered in the case; or
>
> C. disqualification of the lawyer would work substantial hardship on the client.

Minnesota Rules of Prof'l Conduct R. 3.7.

> To be disqualified, an attorney's testimony must be 'necessary.' Simply to assert that the attorney will be called as a witness, a too-frequent trial tactic, is not enough. If the evidence sought to be elicited from the attorney-witness can be produced in some other effective way, it may be that the attorney is not necessary as a witness.

Humphrey v. McLaren, 402 N.W.2d 535, 541 (Minn. 1987).

The Court finds that Attorney Fairbairn is not likely to be a necessary witness in this case. Mr. Perlt and Mr. Benson can testify as to what was said at the November 1998 meetings. See id. In addition, Attorney Fairbairn has filed a Declaration with the Court in which he states his recollection of the meeting and the events leading up to it. (Fairbairn Decl.) Although the ultimate decision regarding who will testify lies with the trial judge, at this time the Court is not convinced that Mr. Fairbairn is a necessary

witness under our rules. For all of the above reasons, Defendant's Motion to Disqualify Kinney & Lange is denied.

**B. Pretrial Scheduling Order in Case No. 02-CV-3466 (JEL/JGL)**

At the motion hearing, the Parties indicated that if Defendant's Motion to Disqualify Plaintiff's Counsel is denied, the Parties wish to apply the pretrial schedule from the '681 Litigation to the '482 Litigation. The Court agrees that this is a reasonable approach to the '482 Litigation. Therefore, the Pretrial Scheduling Order in Case No. 02-CV-777 (Doc. No. 8) will also apply to Case No. 02-CV-3466.

Based upon all the files, records, and proceedings herein, **IT IS HEREBY ORDERED**:

(1) Defendant's Motion to Disqualify Plaintiff's Counsel (Doc. No. 12 in Case No. 02-CV-777 and no Doc. No. in Case No. 02-CV-3466) is **DENIED**; and

(2) The Pretrial Scheduling Order in Case No. 02-CV-777 (Doc. No. 8 in Case O2-CV-777) is also adopted in Case No. 02-CV-3466 (JEL/JGL).

Dated: November 26, 2002

JONATHAN LEBEDOFF
Chief United States Magistrate Judge