**Exhibit C**

MAR 02 1998

PATENT
Docket No. 20609.5

# IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

#10/A
3/12/98

| | | |
|---|---|---|
| In re Application of: | § | |
| LEROY BRAUN et al. | § | |
| | § | Group Art Unit: 2212 |
| Filed: April 29, 1996 | § | |
| | § | Examiner: R. Finley |
| Serial No.: 08/639,694 | § | |
| | § | |
| For: MULTIMEDIA FEATURE FOR DIAGNOSTIC INSTRUMENTATION | § | |

RECEIVED

CERTIFICATE OF MAILING
37 C.F.R. 1.8

I hereby certify that this correspondence is being deposited with the U.S. Postal Service as First Class Mail in an envelope addressed to: Assistant Commissioner for Patents, Washington, D.C. 20231, on the date below:

2/25/98 — Date
Theresa L. Moore

Assistant Commissioner for Patents
Washington, D.C. 20231

## AMENDMENT

Responsive to the Office Action mailed on August 25, 1997, Applicant submits the following amendments and remarks:

**IN THE CLAIMS:**

Amend claims 1-2, 3-5, 11, 14, 21 and 22, as follows:

1. (Amended) A method for [automatedly] administering an audiometric test, comprising the steps of:

controlling an audiometer that performs select logical testing procedures to selectively switch between the audiometer output of [between] test [tones] signals



EXHIBIT
C

generated by the audiometer according to the select logical testing procedures of the audiometer and [sound] signals generated from digital information of a computer[;

first switching the audiometer output to sound signals when the step of controlling indicates a particular condition;

outputting sound representative of the sound signals after the step of first switching;

second switching the audiometer output to test tones after the step of outputting; and

outputting test tones until the next step of first switching]; and generally signals from digital information of the computer, wherein the signals are representative of multimedia elements including test instructions.

In claim 2, line 1, replace "1" with –23--.

4 3. (Amended) A multimedia audiometer, including a conventional audiometer and a computer, comprising:

means for outputting sound signals generated from digital information of the computer;

means for outputting test [tones] signals generated by the conventional audiometer according to pre-programmed logic of the conventional audiometer;

means for switching between the means for outputting sound signals and the means for outputting test [tones] signals, the means for switching being communicatingly

connected with the means for outputting sound signals and the means for outputting test [tone] signals; and

means for controlling the means for switching, the means for controlling being communicatingly connected with the means for switching.

4. (Amended) A multimedia audiometer testing device, responsive to a test subject's input, comprising:

a computer;

a [tone] test signal generator, the test signal generator generates test signals according to prescribed protocols of the test signal generator;

a [switch] logic circuit connected with the computer and the [tone] test signal generator;

wherein the [switch] logic circuit selectively causes [either] the [tone] test signal generator to generate test signals according to the prescribed protocols in response to the test subject's input; and [or] wherein the computer controls the logic circuit to selectively switch between test signals according to the prescribed protocols and [to output sound waves] select discernible signals [and] output by the computer [controls the switch].

5. An audiometer testing device, comprising:

a processor;

a memory, communicatingly connected with the processor, for storing digital data;

a sound wave generator, for generating analog sound signals in respect of digital data electrically connected with the processor;

a test [tone] signal generator [electrically connected with the processor]; and

a [switch] logic circuit connected with [the sound wave generator,] the test [tone] signal generator[,] and the processor;

wherein the [switch] logic circuit and the sound wave generator are [is] controlled by the processor to selectively cause either the sound wave generator or the test [tone] signal generator to output [sound waves] discernible signals.

In claim 7, line 2, replace "detectably" with --detectable--.

In claim 9, line 1, replace "switch" with --processor--.

In claim 10, line 3, replace "switch" with --processor--.

11. (Amended) An instrument, the instrument conducts a test protocol on a test subject, the test protocol comprises an output by the instrument followed by an input to the instrument, the test subject determines the input, the input may be positive, negative, or null, comprising:

an output generator;

an input detector for detecting the input;

a pre-programmed logic connected to the output generator, providing test sequences for output by the output generator responsive to the input as dictated by the pre-programmed logic; and

a computer connected to the input detector and the pre-programmed logic, the computer includes a digital data storage for storing a digital data[;

a multimedia converter, the multimedia converter converts the digital data to an analog signal; and

logic circuitry connected to the input detector, the digital data storage, the multimedia converter, and the output generator, for logically operating on the input, reading the digital data, delivering the digital data to the multimedia converter, and controlling the output generator].

14. (Amended) A multimedia audiometer, comprising:

a basic audiometer, comprising a sine wave generator, a frequency selector, an attenuator, an amplifier, and a pulse control, the basic audiometer performs select testing procedures according to a pre-programmed logic;

a computer;

a multimedia input interface communicatingly connecting the computer and the basic audiometer; and

[and] a communications interface communicatingly connecting the computer and the basic audiometer.

21. A diagnostic instrument, comprising:

means for outputting an audible sound;

means for generating a test [tone] signal;

means for storing a digital data;

means for generating an analog signal derived from the digital data;

means for switching an output of the means for outputting between the test [tone] signal and the analog signal, the means for switching being electrically connected to the means for generating a test [tone] signal and the means for generating an analog signal;

first means for processing;

means for inputting, the means for inputting connects the first means for processing to the means for outputting; [and]

second means for processing, the second means for processing controls the first means for processing; and

means for communicating, the means for communicating connects the second means for processing to the means for outputting, the means for generating the test tone, the means for storing the digital data, the means for generating the analog signal, the means for switching, and the means for inputting.

23
22. A method of performing a diagnostic test protocol, comprising the steps of:

outputting an audible sound;

generating a test [tone] signal;

storing a digital data;

generating an analog sound derived from the digital data;

switching the audible sound from the step of outputting between the test [tone] signal and the analog signal;

first processing a test protocol according to pre-programmed logical procedures;

second processing the digital data to control the step of first processing; and

controlling the steps of outputting, generating the test tone, storing, generating the analog sound, and switching.

Add claims 23-25 as follows:

--23. The method of claim 1, further comprising the steps of:

first switching to signals generated by the computer when the step of controlling indicates a particular condition to which the select logical testing procedures of the audiometer cannot logically respond;

outputting sound in respect of the signals generated by the computer, after the step of first switching;

second switching the audiometer output to test signals of the audiometer according to the select logical testing procedures of the audiometer; and

outputting test signals until the next step of first switching.--

--24. A diagnostic instrument, responsive to a test subject's input, comprising:

a first processor for performing a pre-programmed test sequence according to select logical testing procedures responsive to the subject's input; and

a second processor for controlling the first processor.--

--25. The diagnostic instrument of claim 24, wherein the second processor controls the first processor according to a second pre-programmed test sequence that includes multimedia outputs.--

## REMARKS

Claims 1-22 are pending.

Claims 23-25 are hereby added.

In connection with the foregoing amendments, Applicants supply the following remarks.

1. Claim 11 was rejected under 35 U.S.C. 102(b) as anticipated by Moser et al.

Moser describes a computer, comprising a microprocessor and memory, that controls a CD player. A test subject provides a test response to an operator, and the operator inputs the test response to the computer. The CD player, as with all CD players, plays sound sequences stored in tracks on compact disks. The CD player merely plays those sound sequences from the tracks in the order in which the CD player is controlled to do so. The CD player, itself, does not control the succession of tracks played (other than perhaps to play them in ascending order or possibly some wholly random order). The computer signals the CD player to play a particular track, corresponding to inputs to the computer by the test operator or possibly in accordance with a predetermined program of the computer.

Applicants' claimed invention, on the other hand, comprises a computer and a conventional audiometer. The conventional audiometer is, in effect, the Moser device, i.e., a sound source and a computer. The audiometer includes stored sound sequences that are selected

by a processor of the audiometer to be output in a select succession or predetermined program according to a logical procedure responsive to a test subject's input. The audiometer, thus, includes the stored sound sequence function of the CD player (albeit not necessarily a laser-read device like the CD player) and the test sequencing function of the computer (albeit an internal processor or logic circuitry, rather than a stand-alone external computer). In addition to this conventional audiometer analogous to the Moser device, Applicant's claimed invention includes another computer with its own processor, memory and peripherals. This additional computer allows multimedia functions to be added to the conventional audiometer.

This is an essence and tremendous advantage of Applicants' claimed invention. Applicants can use a conventional audiometer, add a computer with multimedia operations, and achieve an entirely or substantially automated audiometric testing environment. The conventional audiometer has certain, but limited, logical functions during the testing procedure. Those logical functions provide certain pre-programmed responses dictated by the test subject's inputs. In the event of certain errors or other occurrences in testing operation of the conventional audiometer, the audiometer has limited or no logical response and testing can be undesirably halted. (In such instances in testing with conventional audiometers, operator intervention is required at this point to correct the problems) and re-initiate the test. By addition of the computer, in conjunction with the audiometer, for testing, the computer can, through desired programming, provide logical results for virtually every error or occurrence. This speeds testing, allows multiple testing, and limits requirements of operator involvement or intervention, and furthermore is a low-cost solution to this automation of audiometric testing because conventional audiometers are employed and enhanced. As can be understood, the use of conventional

audiometers and a computer can provide automation even with low complexity audiometers and even with multiple audiometers for simultaneous multiple testing.

Applicants have hereby amended claim 11 to more particularly point out certain distinguishing structural and functional aspects of Applicants' invention over Moser. In particular, the amendment provides that Applicants' instrument for conducting a test protocol includes a testing device for performing a testing sequence dictated by pre-programmed logic which is responsive to the input and a computer for controlling the pre-programmed logic and for creating multimedia effects. The amendment overcomes Moser because Moser does not include in the CD player a pre-programmed logic that is responsive to the input and the Moser computer merely controls the CD player and not any logical operations that are performed inherently by the CD player (because the CD player does not include any logical operations).

Applicants request withdrawal of the rejection.

2. Claims 1-2 and 22 were rejected under 35 U.S.C. 102(b) as anticipated by Slavin.

The Examiner stated that Slavin discloses controlling an audiometer to switch between test tones and sound signals from digital information. However, Slavin is much like Moser in relation to Applicants' claimed invention. Slavin includes a tone generator and an audible instruction generator, and a computer that switches between the two. The tone generator merely provides tones as directed by the computer, and does not include any logical operations. The audible instruction generator provides instructions dictated by the computer, but likewise does not itself perform any logical operations.

Applicants' claimed invention differs in that the audiometer that provides the test signals has certain logical capabilities to conduct the test responsive to the test subject's inputs. The logical capabilities of the audiometer are enhanced by the computer which controls the audiometer and, thus, the particular logical operations of the audiometer. The computer adds logical possibilities for the testing procedure and provides multimedia features to the testing environment.

Applicant's amended claims particularly point out the computer control of the audiometer and the fact that the audiometer, itself, performs select logical testing procedures. The Slavin tone generator and audible instruction generator do not provide these features.

Withdrawal of the rejection is requested.

3. Claims 1-22 were rejected under 35 U.S.C. § 103(a) as unpatentable over Delisle et al.

Delisle is also akin to Moser and Slavin in that a tape player, that itself does not perform any logical testing procedure, is controlled by a computer to select the tape player output.

The amendments to Applicants' claims particularly illustrate the distinction that a conventional audiometer performing a select logical testing procedure (not merely providing detectable output) is controlled by a computer that adds multimedia features to the testing.

Applicants submit that the rejection should be withdrawn.

4. Claims 3-13 and 21-22 were rejected under 35 U.S.C. § 103(a) as unpatentable over Slavin.

As discussed in 2, above, Slavin merely provides computerized switching between test tones and sound signals. The test tones and sound signals are not generated through any select logical testing procedures of the tone generator or the audible instruction generator.

Applicants' claimed invention includes the audiometer that performs a select logical testing procedure and the computer that controls the audiometer and adds multimedia.

The newly added claims particularly point out the components and operations of conventional audiometers that perform logical testing procedures and further describe the operations of the conventional audiometer with its own processor being controlled by the processor of the computer.

Applicants request reconsideration and withdrawal of the rejections, and allowance of all claims, as amended.

Respectfully submitted,

H. Dale Langley, Jr.

H. Dale Langley, Jr.
Reg. No. 35,927

Dated: February 25, 1998

AKIN, GUMP, STRUASS, HAUER & FELD, L.L.P.
1900 Front Bank Plaza
816 Congress Avenue
Austin, Texas 78701
Telephone: (512) 499-6200
Telecopier: (512) 499-6290

PATENT
Docket No. 20609.5

**IN THE UNITED STATES PATENT AND TRADEMARK OFFICE**

In re Application of: §
§
LEROY BRAUN et al. §
§ Group Art Unit: 2212
Filed: April 29, 1996 §
§ Examiner: R. Finley
Serial No.: 08/639,694 §
§
For: MULTIMEDIA FEATURE FOR DIAGNOSTIC INSTRUMENTATION §

RECEIVED
MAR 0 5 1998
GROUP 2200

CERTIFICATE OF MAILING
37 C.F.R. 1.8

I hereby certify that this correspondence is being deposited with the U.S. Postal Service as First Class Mail in an envelope addressed to: Assistant Commissioner for Patents, Washington, D.C. 20231, on the date below:

2/25/98 — Date
Theresa L. Moore

Assistant Commissioner for Patents
Washington, D.C. 20231

**TRANSMITTAL LETTER**

Enclosed please find the following documents for filing in connection with the above-referenced patent application:

1. Amendment;
2. Petition for Extension of Time;
3. Check in the amount of $950.00; and
4. Return Postcard.

Please charge any and all fees in connection with this letter or the related documents to Deposit Account No. 01-0660/044000.0000.

A duplicate copy of this document is enclosed.

Respectfully submitted,

H. Dale Langley, Jr.
Reg. No. 35,927

Dated: February 25, 1998

AKIN, GUMP, STRUASS, HAUER & FELD, L.L.P.
1900 Front Bank Plaza
816 Congress Avenue
Austin, Texas 78701
Telephone: (512) 499-6200
Telecopier: (512) 499-6290

UNITED STATES DEPARTMENT OF COMMERCE
Patent and Trademark Office
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

08/639,694 04/29/96 BRAUN L ATTORNEY DOCKET NO. 20609.5

B2M1/0330

EXAMINER
FINLEY, R

H DALE LANGLEY JR.
AKIN GUMP STRAUSS HAUER & FELD
1900 FROST BANK PLAZA
816 CONGRESS AVENUE
AUSTIN TX 78701

2212 11

03/30/98

## NOTICE OF ALLOWABILITY

PART I.

1. ☑ This communication is responsive to amendment filed 3/2/98.
2. ☑ All the claims being allowable, PROSECUTION ON THE MERITS IS (OR REMAINS) CLOSED in this application. If not included herewith (or previously mailed), a Notice Of Allowance And Issue Fee Due or other appropriate communication will be sent in due course.
3. ☑ The allowed claims are 1-25.
4. ☐ The drawings filed on ______ are acceptable.
5. ☐ Acknowledgment is made of the claim for priority under 35 U.S.C. 119. The certified copy has [ ] been received. [ ] not been received. [ ] been filed in parent application Serial No. ______, filed on ______.
6. ☐ Note the attached Examiner's Amendment.
7. ☐ Note the attached Examiner Interview Summary Record, PTOL-413.
8. ☐ Note the attached Examiner's Statement of Reasons for Allowance.
9. ☐ Note the attached NOTICE OF REFERENCES CITED, PTO-892.
10. ☐ Note the attached INFORMATION DISCLOSURE CITATION, PTO-1449.

PART II.

A SHORTENED STATUTORY PERIOD FOR RESPONSE to comply with the requirements noted below is set to EXPIRE THREE MONTHS FROM THE "DATE MAILED" indicated on this form. Failure to timely comply will result in the ABANDONMENT of this application. Extensions of time may be obtained under the provisions of 37 CFR 1.136(a).

1. ☐ Note the attached EXAMINER'S AMENDMENT or NOTICE OF INFORMAL APPLICATION, PTO-152, which discloses that the oath or declaration is deficient. A SUBSTITUTE OATH OR DECLARATION IS REQUIRED.
2. ☑ APPLICANT MUST MAKE THE DRAWING CHANGES INDICATED BELOW IN THE MANNER SET FORTH ON THE REVERSE SIDE OF THIS PAPER.
   a. ☐ Drawing informalities are indicated on the NOTICE RE PATENT DRAWINGS, PTO-948, attached hereto or to Paper No. ______. CORRECTION IS REQUIRED.
   b. ☐ The proposed drawing correction filed on ______ has been approved by the examiner. CORRECTION IS REQUIRED.
   c. ☐ Approved drawing corrections are described by the examiner in the attached EXAMINER'S AMENDMENT. CORRECTION IS REQUIRED.
   d. ☑ Formal drawings are now REQUIRED.

---

Any response to this letter should include in the upper right hand corner, the following information from the NOTICE OF ALLOWANCE AND ISSUE FEE DUE: ISSUE BATCH NUMBER, DATE OF THE NOTICE OF ALLOWANCE, AND SERIAL NUMBER.

**Attachments:**

- Examiner's Amendment
- Examiner Interview Summary Record, PTOL-413
- Reasons for Allowance
- Notice of References Cited, PTO-892
- Information Disclosure Citation, PTO-1449
- Notice of Informal Application, PTO-152
- Notice re Patent Drawings, PTO-948
- Listing of Bonded Draftsmen
- Other

Mexion E. Willi

UNITED STATES DEPARTMENT OF COMMERCE
Patent and Trademark Office

# NOTICE OF ALLOWANCE AND ISSUE FEE DUE

| APPLICATION NO. | FILING DATE | TOTAL CLAIMS | EXAMINER AND GROUP ART UNIT | DATE MAILED |
|---|---|---|---|---|
| | | | | |

First Named Applicant

TITLE OF INVENTION

| ATTY'S DOCKET NO. | CLASS-SUBCLASS | BATCH NO. | APPLN. TYPE | SMALL ENTITY | FEE DUE | DATE DUE |
|---|---|---|---|---|---|---|
| | | | | | | |

***THE APPLICATION IDENTIFIED ABOVE HAS BEEN EXAMINED AND IS ALLOWED FOR ISSUANCE AS A PATENT. PROSECUTION ON THE MERITS IS CLOSED.***

***THE ISSUE FEE MUST BE PAID WITHIN THREE MONTHS FROM THE MAILING DATE OF THIS NOTICE OR THIS APPLICATION SHALL BE REGARDED AS ABANDONED. THIS STATUTORY PERIOD CANNOT BE EXTENDED.***

## *HOW TO RESPOND TO THIS NOTICE:*

I. Review the SMALL ENTITY status shown above.
If the SMALL ENTITY is shown as YES, verify your current SMALL ENTITY status:

A. If the status is changed, pay twice the amount of the FEE DUE shown above and notify the Patent and Trademark Office of the change in status, or
B. If the status is the same, pay the FEE DUE shown above.

If the SMALL ENTITY is shown as NO:

A. Pay FEE DUE shown above, or

B. File verified statement of Small Entity Status before, or with, payment of 1/2 the FEE DUE shown above.

II. Part B-Issue Fee Transmittal should be completed and returned to the Patent and Trademark Office (PTO) with your ISSUE FEE. Even if the ISSUE FEE has already been paid by charge to deposit account, Part B Issue Fee Transmittal should be completed and returned. If you are charging the ISSUE FEE to your deposit account, section "4b" of Part B-Issue Fee Transmittal should be completed and an extra copy of the form should be submitted.

III. All communications regarding this application must give application number and batch number.
Please direct all communications prior to issuance to Box ISSUE FEE unless advised to the contrary.

***IMPORTANT REMINDER:** Utility patents issuing on applications filed on or after Dec. 12, 1980 may require payment of maintenance fees. It is patentee's responsibility to ensure timely payment of maintenance fees when due.*

PTOL-85 (REV. 10-96) Approved for use through 06/30/99. (0651-0033)

PATENT AND TRADEMARK OFFICE COPY

☆U.S.GOVERNMENT PRINTING OFFICE 1997-433-221/62716